GRAVES EQUIPMENT, INC. *vs.* M. DeMATTEO CONSTRUCTION
Co. & another.[1]

Hampshire.  January 8, 1986. — March 13, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Assignment. Damages,* Liquidated damages. *Contract,* Building contract.

An assignee of a materials supplier's interest in retainages withheld under
a construction contract, wherein the supplier agreed to supply certain
materials to a general contractor on a highway construction project, was,
pursuant to G. L. c. 106, § 9-318 (1) (*a*), subject to the claim asserted
by the general contractor that it was entitled under the terms of the
contract to offset the retainages as liquidated damages for the supplier's
failure to perform, and consequently, the assignee could not recover
those retainages withheld, where the liquidated damages provision of
the contract had been negotiated on an arm's-length basis, and where
the amount of the retainages was not so disproportionate to the damages
as to be a penalty. [110-113]

CIVIL ACTION commenced in the Superior Court Department
on January 16, 1980.

The case was heard by *George C. Keady, Jr.,* J., on a
statement of agreed facts.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Joel Lewin* for M. DeMatteo Construction Co.

*David R. Kaplan,* for the plaintiff, submitted a brief.

ABRAMS, J. At issue are the respective rights of an account
debtor and an assignee in retainages withheld under a construc-
tion contract. The defendant M. DeMatteo Construction Co.
(DeMatteo) appeals from a judgment in favor of the plaintiff,
Graves Equipment, Inc. (Graves), in the amount of
$10,692.52, plus interest and costs. That amount represents
the retainages held by DeMatteo under a material supplier
contract with Dirt Movers, Inc. (Dirt Movers), an assignor of

[1] Dirt Movers, Inc.

Graves. DeMatteo argues that it is entitled under the terms of that contract to offset the retainages as liquidated damages for Dirt Movers' failure to perform. We transferred the case to this court on our own motion. We conclude that Graves, as assignee, is subject to the claims and defenses asserted by DeMatteo against Dirt Movers pursuant to G. L. c. 106, § 9-318 (1) (*a*). We reverse.

The parties agreed to the following facts. In 1979, DeMatteo was the general contractor on a highway construction project for the Department of Public Works (DPW). On June 19, 1979, DeMatteo and Dirt Movers executed an agreement whereby Dirt Movers agreed to supply certain materials required under the DPW contract. From June through December, 1979, Dirt Movers supplied the materials as agreed and was paid a total of $209,212.61. DeMatteo withheld retainages of $10,692.52. On December 6, 1979, Dirt Movers assigned all retainages due it under the contract to Graves.[2] Dirt Movers owes Graves $12,000.00.

The project was shut down for the winter but resumed in the spring. In April, 1980, DeMatteo directed Dirt Movers to deliver the materials, which it failed to do. As a result, DeMatteo terminated the contract and subsequently obtained the necessary materials from other suppliers at a higher cost. The excess cost, based on Dirt Movers' proportional rate of delivery[3] prior to the winter shutdown, was $19,270.65.

The trial judge ruled that Dirt Movers' obligation under its contract with DeMatteo was for a sale of goods and was governed by Article 9 of the Uniform Commercial Code. G. L. c. 106, § 9-318 (1) (1984 ed.), provides: "Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in section 9-206 the rights of an assignee are subject to (*a*) all the terms of the

---

[2] The record indicates that DeMatteo received notice of this assignment no later than December 11, 1979.

[3] During the period from June to December, 1979, other contractors also supplied materials (ordinary and gravel borrow) to DeMatteo. When DeMatteo resumed construction, it would have required Dirt Movers to deliver the same proportional amount of material as it had before the shutdown.

contract between the account debtor and assignor and any defense or claim arising therefrom; and (*b*) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment." The judge concluded that DeMatteo could not set off any damages incurred in 1980 against any sums due Dirt Movers as of December, 1979, on the ground that notice of the assignment was received by DeMatteo long before any breach occurred. In so ruling, the judge apparently looked to § 9-318 (1) (*b*). That provision governs claims and defenses which arise independently of the contract that is the subject of the assignment. *United Cal. Bank* v. *Eastern Mountain Sports, Inc.*, 546 F. Supp. 945, 963-964 (D. Mass. 1982), aff'd mem., 705 F.2d 439 (1st Cir. 1983).

However, the claims and defenses asserted by DeMatteo arise out of the terms of the material supplier contract from which the assignment was created and are therefore governed by § 9-318 (1) (*a*). Under that provision, it is immaterial when notice of the assignment was given or when the claims and defenses accrued. 546 F. Supp. at 963. See *Fall River Trust Co.* v. *B.G. Browdy, Inc.*, 346 Mass. 614, 616 (1964). Accord *James Talcott, Inc.* v. *H. Corenzwit & Co.*, 76 N.J. 305, 310 (1978). Section 9-318 (1) (*a*) incorporates the common law rule that an assignee of contract rights stands in the shoes of the assignor and has no greater rights against the debtor than the assignor had. See *id.* at 309. See also *Quincy Trust Co.* v. *Pembroke*, 346 Mass. 730, 732 (1964); *Farmers Acceptance Corp.* v. *DeLozier*, 178 Colo. 291, 294 (1972).

Graves also argues that the contractual liquidated damages provision is unenforceable because it is not a reasonable forecast of damages. However, "[t]here is nothing to indicate that the disputed provision . . . was not negotiated on an arms-length basis between two substantial business firms." *Manganaro Drywall, Inc.* v. *Penn-Simon Constr. Co.*, 357 Mass. 653, 657 (1970). Furthermore, the amount of the retainages "when considered in relation to the total transaction is not so disproportionate to the damages caused to [DeMatteo] by [Dirt Movers'] breach of the agreement that it amounts to a penalty."

*Id.* at 658. See *Lynch* v. *Andrew,* 20 Mass. App. Ct. 623, 627 (1985). In fact, the sum of the retainages is far less than the amount which Dirt Movers might be called on to pay.[4]

The judgment is reversed and the case is remanded to the Superior Court for further proceedings.

*So ordered.*

---

[4] Neither in the trial court nor in this court has Graves challenged the validity of the retainage clause on grounds other than that it is not a permissible liquidated damages provision. Graves asserts, however, that the nonassignability clause of the contract and DeMatteo's refusal to assent to Dirt Movers' assignment of the retainages to Graves are ineffective under G. L. c. 106, § 9-318 (4) (1984 ed.), and, consequently, are a violation of G. L. c. 93A, §§ 2 and 11 (1984 ed.). We need not decide that issue. Assuming, without deciding, that the nonassignability clause is ineffective under G. L. c. 106, § 9-318 (4), Graves has not met its burden under G. L. c. 93A, §§ 2 and 11, of showing that, by virtue of the nonassignability clause, it suffered any loss of money or property, real or personal. There is no evidence that either Graves or Dirt Movers requested payment of the retainages before Dirt Movers failed to perform under the contract. There is no evidence that, under the contract, any money was then due either Graves or Dirt Movers. On the record before us, no final determination of the quantity of borrow has been made by the DPW, which, under the contract, is a condition precedent to release of the retainages by DeMatteo.