**In re BUCKLEY & ASSOCIATES INSURANCE, INC. Debtor.**

**James R. PARIS, Trustee, Plaintiff,**

**v.**

**TRANSAMERICA INSURANCE GROUP, Defendant.**

Bankruptcy No. 1–83–01030.
Adv. No. 1–85–0173.

United States Bankruptcy Court,
E.D. Tennessee.

Nov. 19, 1986.

Harold L. North, Jr., of Ray & North, Chattanooga, Tenn., for plaintiff.

Craig J. Donaldson, of Dearborn & Ewing, Nashville, Tenn., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

This suit was brought by the debtor, Buckley & Associates, Inc., while it was still operating under a confirmed chapter 11 plan of reorganization. When the case was converted to a chapter 7 liquidation, the bankruptcy trustee was substituted for the debtor as the plaintiff in this proceeding. The trustee seeks to recover profit sharing commissions allegedly owed by the defendant, Transamerica, to the debtor. Transamerica contends that it is not liable under the profit sharing contract or that it can recoup or set-off larger debts that the debtor owes it.

The parties have submitted cross motions for summary judgment. Bankruptcy Rule 7056; Fed.R.Civ.Proc. 56.

The undisputed facts appear to be as follows.

The debtor became an agent for the defendant, the Transamerica group of insur-

ance companies, under an agency contract executed in 1980.

In May, 1983, the debtor filed a bankruptcy petition for reorganization under chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 101–556 & 1101–1146. At that time, the debtor owed Transamerica about $138,000 for premiums collected by the debtor but not remitted to Transamerica.

In January, 1984, the court confirmed the debtor's chapter 11 plan. The plan provided for the $138,000 prebankruptcy debt to Transamerica. The plan also provided that the debtor assumed the agency contract with Transamerica. The debtor continued to operate under the agency contract after confirmation.

About the time the plan was confirmed in January, 1984, the debtor and Transamerica entered into the profit sharing contract under which the trustee seeks to recover. The record does not reveal exactly whether the profit sharing contract was executed before or after confirmation of the plan.

The debtor and Transamerica had also entered into profit sharing contracts in 1980 and 1983, but apparently not in 1981 and 1982.

In 1985, Transamerica sent the debtor a statement showing that no profit-sharing commissions were due under the 1984 contract. Transamerica reached this result by using as a "write-off" the debtor's prebankruptcy debt of $131,000 to Transamerica.

A write-off of bad debts in the formula is not the same as a direct set-off of the debts against the profit sharing commissions that would otherwise be due. The debts written off are simply one deduction made in figuring the "adjusted earned premium". "Total losses and expenses" are deducted from "adjusted earned premium" to get net profit (if any). A percentage of net profit is paid as the profit sharing commission.

If Transamerica had not used this write-off, the formula would have shown between $11,000 and $12,000 in profit sharing

commissions due the debtor. This is the amount that the trustee seeks to recover.

In October, 1985, the debtor's chapter 11 case was converted to chapter 7. The debtor owes Transamerica a postbankruptcy debt of about $52,000 for premiums collected by the debtor and not remitted. The evidence does not show how much of this debt was incurred before and after confirmation of the debtor's chapter 11 plan.

The agency contract between the debtor and Transamerica provided that the debtor would be paid commissions on the sale of Transamerica insurance. On policies billed by the debtor, it was supposed to retain the commission and remit the net premium to Transamerica. On policies billed by Transamerica, the debtor was supposed to remit the entire premium to Transamerica, which would then send the commission to the debtor.

The agency contract provided that monthly balances due to the debtor or to Transamerica were due within 45 days after the close of the month for which the statement was prepared by Transamerica or submitted by the debtor, whether or not the premiums were collected by the debtor.

The profit sharing agreement provided that Transamerica would pay the debtor "a Profit Sharing Commission on the underwriting profits realized by the Company on the combined business written by the Agent under said Agency Agreement...." The profit sharing agreement provided a formula for determining the net profit on which the debtor would be paid a commission. The formula was "adjusted earned premium" minus "total losses and expenses".

In determining the adjusted earned premium "write-offs" were subtracted from earned premiums. Write-offs were defined as premiums due to Transamerica and written off as uncollectable during the year to which the profit sharing agreement applied. In this case, that would mean premium written off during 1984, even if they were due for earlier years.

It was in the deduction for write-offs that Transamerica deducted about $131,000 of the debtor's prebankruptcy debt. The debt was provided for in the chapter 11 plan, as pointed out earlier.

The debtor then brought this suit to collect the $11,000 to $12,000 in profit sharing commissions that would be due if the $131,000 debt was not allowed as a write-off.

### Discussion

■ The court is of the opinion that Transamerica cannot use the $131,000 prebankruptcy debt as a write-off in the profit sharing formula. The debt was provided for in the chapter 11 plan that was confirmed about the same time the profit sharing contract was executed. Allowing Transamerica to use the debt as a write-off would be the same as allowing it to use the profit sharing contract to collect the debt.

That was not contemplated by the plan or by the debtor. The debtor obviously did not enter into the profit sharing contract with the expectation that the prebankruptcy debt provided for in the plan would prevent it from earning any commissions. Transamerica was bound by the plan as to the collection of the prebankruptcy debt. 11 U.S.C. § 1141(a). The profit sharing contract should be treated as starting the parties anew, without regard to any prebankruptcy debt provided for in the confirmed chapter 11 plan.

Striking the $131,000 write-off from the formula would make Transamerica owe the debtor about $12,000 in profit sharing commissions. The question that arises is whether Transamerica can avoid paying this debt by using the $131,000 prebankruptcy debt as a direct set-off rather than a write-off. In an earlier decision, the court pointed out that a creditor cannot collect a prebankruptcy debt by setting off its postbankruptcy debt to the debtor. *Still v. United Pipe and Supply Co.*, 50 B.R. 498, 502 (Bankr.E.D.Tenn.1985) (In re W.L. Jackson Mfg. Co.). To avoid the application of this rule, Transamerica argues that what is involved is recoupment, not set-off.

■ The right to set-off can arise whenever two parties owe "mutual" debts to each other that arose out of different transactions. The right to recoupment, however, is generally said to arise out of a single contract or transaction. *Waldschmidt v. CBS, Inc.*, 14 B.R. 309 (M.D.Tenn. 1981); *Sapir v. Blue Cross/Blue Shield*, 34 B.R. 385 (S.D.N.Y.1983) aff'g 22 B.R. 427, 9 Bankr.Ct.Dec. 505 (Bankr.S.D.N.Y. 1983) (In re Yonkers-Hamilton Sanitarium, Inc.); *Lewis v. Woodfolk*, 61 Tenn. 25 (1872); *Nashville & C.R. Co. v. Chumley*, 53 Tenn. 325 (1871); *Hulme v. Brown*, 50 Tenn. 679 (1871); 4 J. Moore, Collier on Bankruptcy ¶ 68.03 (14th ed. 1978).

■ If recoupment were allowed in this case, it would be under two contracts, and that is a contradiction in terms. Transamerica would be allowed to reduce its debt under the profit sharing contract because of the debtor's debt under the agency contract. The contracts are obviously related, but not so related that this is recoupment rather than set-off. Transamerica apparently offered the profit sharing contracts on a yearly, take-it-or-leave-it basis. Agents were not required to enter into profit sharing contracts. The debtor did not always do so. Furthermore, the debtor would have owed Transamerica premiums under the agency contract even if it had never executed the profit sharing contract. The contracts are not part of one transaction. Set-off, rather than recoupment, appears to be the correct legal theory, but one issue remains.

■ The profit sharing contract conditioned Transamerica's liability on the debtor's compliance with the agency contract. This amounts to nothing more than putting the right to set-off in writing. It does not convert set-off into recoupment, especially since both contracts were Transamerica's forms and the profit sharing contract could only give rise to a debt from Transamerica to the debtor. Thus, the court concludes that recoupment does not apply. Transamerica cannot set-off the $12,000 in profit sharing commissions it owes the debtor

against the debtor's $131,000 prebankruptcy debt under the agency contract.

The court's conclusions up to this point render irrelevant the argument that Transamerica cannot use either set-off or recoupment because the profit sharing contract limited its remedy to using the prebankruptcy debt only as a write-off, if at all.

■ This brings the court to the question of whether Transamerica can set-off against the profit sharing commissions the debtor's post-bankruptcy debt for unremitted premiums.

Again the argument arises that the debt cannot be set off because Transamerica's only remedy is to use it as a write-off in the profit sharing formula. The proof is unclear as to whether any of the debt can be used as a write-off in the profit sharing formula. The definition of write-off limits it to debts actually written off in the year of the profit sharing contract. It does not include all debts owed. Furthermore, if the debt can be used as a write-off, the debtor will be entitled to only about $50 in profit sharing commissions. That amount is hardly worth pursuing by the trustee.

The argument could be taken a step further—to the point of saying that a debt which has not been written off must simply be held until it has been written off and can be used under a later profit sharing formula. This argument does not make sense in light of the facts; agents were not required to enter into the profit sharing contracts and the contracts were only for one year each.

The court concludes that this election-of-remedies argument is not controlling. The ultimate question is whether the postbankruptcy debt can be set-off against the profit sharing commissions that are due when neither the prebankruptcy debt nor the postbankruptcy debt is used as a write-off in the profit sharing formula.

■ In the *W.L. Jackson* cases, this court held that mutual postbankruptcy debts could not be set-off in a chapter 11 case that had converted to chapter 7. *Still v. United Pipe and Supply Co.*, 50 B.R. 498 (Bankr.E.D.Tenn.1985) (In re W.L. Jackson Mfg. Co.); *Still v. United States*, 50 B.R. 506, 12 Coll.Bankr.Cas.2d 1365 (Bankr.E.D.Tenn.1985) (In re W.L. Jackson Mfg. Co.).

The court reasoned that § 348 converts a creditor's post-bankruptcy claim against the debtor into a prebankruptcy claim but leaves the creditor's debt to the debtor a postbankruptcy debt. This invoked the rule against allowing the creditor to collect the prebankruptcy claim by setting off its post-bankruptcy debt.

The court distinguished cases in which such set-offs had been allowed on the ground that they involved clear exchanges; the debt to the creditor arose because it furnished money or property to the debtor. In other words, set-off had been allowed when the creditor's claim clearly represented an equivalent benefit to the debtor.

That is true in this case. The debtor's postbankruptcy debt is for premiums it collected and did not pay to Transamerica. The debtor has had the use of the unremitted premiums and now wants Transamerica to pay it the profit sharing commissions. Such a result does not seem fair. The court concludes that set-off should be allowed.

This may seem at odds with the result in the *W.L. Jackson* cases, but the facts of this case call for a different result. Furthermore, the law as set out in § 348 is far from clear as to how postbankruptcy debts are to be treated when a chapter 11 case converts to chapter 7 after partial performance of a confirmed plan. See also Bankruptcy Act of 1898, § 381, 11 U.S.C. § 781 (1978). In these circumstances, the court believes it has reached a result that is not only legally correct but is just as to Transamerica and the debtor's other creditors.

The court will enter an order granting summary judgment for Transamerica finding nothing due to the trustee.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.