In re OTHA C. JEAN & ASSOCIATES, INC., Debtor.

USBI CO., Plaintiff,

v.

OTHA C. JEAN & ASSOCIATES, INC., Peoples Bank of Elk Valley, Dominion Bank of Middle Tennessee, and the United States of America, acting through the Defense Contract Auditing Agency of the Department of Defense, Defendants.

Bankruptcy No. 90–13797.
Adv. No. 91–1612.

United States Bankruptcy Court, E.D. Tennessee.

Feb. 18, 1993.

James T. Baxter, III and L. Bruce Ables, Berry, Ables, Tatum, Little & Baxter, Huntsville, AL, for plaintiff, USBI Co.

William L. Norton, III, Boult, Cummings, Connor & Berry, Nashville, TN, for defendants, Peoples Bank and Dominion Bank.

### MEMORANDUM

RALPH H. KELLEY, Chief Judge.

This adversary proceeding has become a dispute between USBI on one side and the two banks on the other side. USBI hired the debtor, Jean & Associates, as a subcontractor. After filing bankruptcy, Jean & Associates billed USBI about $99,000 for work done under the contracts. USBI asserts a claim against Jean & Associates for about $476,000 in overpayments under earlier contracts. USBI argues that it can set off the $99,000 it owes to Jean & Associates against the $476,000 that Jean & Associates owes to it.

The banks share a perfected security interest in the general intangibles and accounts of Jean & Associates. They argue that their security interest gives them the right to the $99,000 ahead of any set-off rights that USBI may have. The banks have filed a motion for summary judgment. USBI has filed its own motion for summary judgment.

The banks argue that their security interest has priority because § 553 of the Bankruptcy Code disallows set-off by USBI. 11 U.S.C.A. § 553 (West 1979 & Supp.1992). Section 553 generally preserves the right to set off mutual pre-bankruptcy debts. If a creditor could collect a pre-bankruptcy claim against the debtor by setting off a pre-bankruptcy debt to the debtor, § 553(a) preserves the creditor's right of set-off, subject to some restrictions.

This implies another general rule: a creditor cannot collect its pre-bankruptcy claim by setting off its post-bankruptcy debt to the debtor. *Paris v. Transamerica Ins. Group (In re Buckley & Associates Ins., Inc.)*, 67 B.R. 331, 334 (Bankr. E.D.Tenn.1986), *rev'd on other grounds* 78 B.R. 155 (E.D.Tenn.1987). The banks argue that this rule prevents set-off by USBI; USBI's claim against Jean & Associates arose pre-bankruptcy, but USBI's $99,000 debt to Jean & Associates arose post-bankruptcy.

USBI argues that § 553 is irrelevant. The bankruptcy trustee might use § 553 to prevent the set-off for the benefit of the bankruptcy estate, but the banks cannot use it solely for their benefit. Since the outcome of this dispute will not affect the debtor or the bankruptcy estate, it should be decided as if there were no bankruptcy.

The rule that the banks rely upon follows a basic principle of bankruptcy law: a creditor cannot collect its *unsecured* pre-bankruptcy claim by taking, solely for its benefit, property that the debtor acquires after the beginning of the bankruptcy case. Property acquired by the debtor post-bankruptcy must be used for the benefit of all unsecured creditors or for the debtor's benefit in reorganizing or for the debtor's benefit in reorganizing or for the debtor's fresh start. 11 U.S.C.A. §§ 524, 541, 727, 1123, 1129, 1141, 1207, 1222, 1225, 1227, 1306, 1322, 1325 & 1327 (West 1979 & Supp.1992). *See MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc.*, 882 F.2d 615 (2d Cir.1989); *Prudential Ins. Co. v. Nelson*, 101 F.2d 441 (6th Cir.1939), *cert.*

*den.* 308 U.S. 583, 60 S.Ct. 106, 84 L.Ed. 489 (1939) (decided under prior bankruptcy statutes).

■ Denying USBI the right of set-off will not increase the money available in the bankruptcy case to pay all unsecured claims. It will not give Jean & Associates use of the money for reorganization or for a fresh start. Of course, if set-off is allowed, USBI will collect a large portion of its claim, even though other creditors with pre-bankruptcy unsecured claims may collect less or nothing at all in the bankruptcy case. However, the payment to USBI would come from an asset, USBI's debt to Jean & Associates, that is not available to pay the other pre-bankruptcy unsecured claims.

The court agrees with USBI. Allowing set-off will not violate the reasons behind the rules expressed or implied by § 553(a). Denying set-off under § 553 will give the banks an advantage based on bankruptcy law for no reason related to the bankruptcy case. The banks should not get a windfall because Jean & Associates happened to file bankruptcy. The result should be controlled by the law that would control outside of bankruptcy. *MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc.,* 882 F.2d 615 (2d Cir.1989). The court concludes that § 553(a) does not bar set-off by USBI. This brings the court to the banks' argument on priority under state law.

The banks make a three-step argument. First, USBI's right to set-off is a security interest under Article 9 of the Uniform Commercial Code (the UCC). Second, priority must be determined by Article 9's rules for priority between security interests. Third, priority is determined by the rules in § 9–312, and under those rules, the bank's perfected security interest has priority over USBI's unperfected security interest. TENN.CODE ANN. § 47–9–312 (1992).

At least one case supports the banks' argument. *Atlantic Kraft Corp. v. Gibson Group, Inc. (In re Gibson Group, Inc.),* 126 B.R. 759 (Bankr.S.D.Ohio 1991). In that case the court held that a creditor with a security interest in an account receivable was not an "assignee" under UCC § 9–318. TENN.CODE ANN. § 47–9–318 (1992). It also held that an account debtor's right of set-off against the debtor was a security interest. This court disagrees.

■ A creditor's right of set-off is not an Article 9 security interest. Section 9–104 of the UCC provides that Article 9 does not apply to a right of set-off. TENN.CODE ANN. § 47–9–104(j) (1992). Professor Grant Gilmore, one of the drafters of Article 9, thought that the exception should have been left out: "Of course a right of set-off is not a security interest and has never been confused with one; the statute might as appropriately exclude fan dancing." However, banking groups lobbied to have the exception put in so that a bank's right to set off a customer's account could not be mistaken for a security interest. 1 GRANT GILMORE, SECURITY INTERESTS IN PERSONAL PROPERTY § 10.7 at 315–316 (Little Brown 1965).

Though a right of set-off is not a security interest, the exception in § 9–104 is worded too broadly. It says that Article 9 does not apply to a right of set-off. It would have been more accurate to say that a right of set-off is not a security interest but may be dealt with by some provisions of Article 9.

In particular, § 9–318 appears to apply to this dispute, except for the problem with the meaning of "assignee." Article 9 usually refers to a creditor with a security interest as a "secured party," but for some unknown reason, § 9–318 uses the term "assignee" instead of "secured party." TENN.CODE ANN. § 47–9–105(m) (1992); TENN.CODE ANN. § 47–9–318(1) (1992).

■ At one point, Professor Gilmore described the debtor as the assignor and the secured party as the assignee under § 9–318. 2 GRANT GILMORE, SECURITY INTERESTS IN PERSONAL PROPERTY § 41.10 at 1116 (Little Brown 1965). A creditor who takes an assignment of accounts or general intangibles to secure a debt is a secured party. TENN.CODE ANN. §§ 47–1–201(37), 47–9–102, 47–9–104 & 47–9–105(m) (1992). The court believes that the converse is true; a secured party with a security interest in ac-

counts or general intangibles is the assignee under § 9–318.

The courts have generally applied § 9–318 this way without mentioning the change in terminology. *See, e.g., Barclaysamerican Business Credit, Inc. v. Paul Safran Metal Co.,* 566 F.Supp. 254 (N.D.Ill.1983); *Michigan Milk Producers Ass'n v. Bancroft Milk Products, Inc. (In re Bancroft Dairy, Inc.),* 10 B.R. 920 (Bankr.W.D.Mich.1981); *Bank of Kansas v. Hutchinson Health Services, Inc.,* 13 Kan.App.2d 421, 773 P.2d 660 (1989), *aff'd* 246 Kan. 83, 785 P.2d 1349 (1990); *James Talcott, Inc. v. H. Corenzwit & Co.,* 76 N.J. 305, 387 A.2d 350 (1978).

■ The court concludes that "assignee" under § 9–318 includes a secured party with a security interest in accounts or general intangibles. Section 9–318 determines priority between USBI's right of set-off and the banks' security interest.

In two other cases the courts applied the priority rules under § 9–312, instead of § 9–318, to deny set-off, but those cases can easily be distinguished. In both cases the account debtor wanted to set off someone else's claim against the debtor. *MNC Commercial Corp. v. Joseph T. Ryerson & Son, Inc.,* 882 F.2d 615 (2d Cir.1989); *Bank Leumi Trust Co. v. Collins Sales Service, Inc.,* 47 N.Y.2d 888, 419 N.Y.S.2d 474, 393 N.E.2d 468 (N.Y.1978).

■ Under the general rule in § 9–318(1)(a), USBI's defenses under the contracts that gave rise to the $99,000 debt would have priority over the banks' security interest in the $99,000 debt. TENN.CODE ANN. § 47–9–318(1)(a) (1992); *Patton v. McHone,* 822 S.W.2d 608 (Tenn.App.1991).

There is an exception to this rule when the contract between the account debtor (USBI) and the debtor (Jean & Associates) waives the account debtor's defenses as to an assignee (the banks). As far as the court knows, the later contracts between USBI and Jean & Associates do not contain a waiver of defenses by USBI.

■ The general rule of § 9–318(1)(a) appears not to apply for another reason. USBI's claim against Jean & Associates for the overpayments arose under the earlier contracts, not the later contracts that gave rise to the $99,000 debt. Nevertheless, USBI argues that the general rule in § 9–318(1)(a) should apply. USBI bases this argument on a clause in the later contracts. It says that USBI can set off a debt under the later contracts against any claim it has against Jean & Associates.

The court does not agree with USBI's argument. The earlier contracts and the later contracts are not the same contract for the purposes of § 9–318(1). The clause that USBI relies upon does not make the separate contracts into one contract. The clause only puts into writing USBI's right to set off claims under different contracts. *Paris v. Transamerica Ins. Group (In re Buckley & Associates Ins., Inc.),* 67 B.R. 331, 334 (Bankr.E.D.Tenn.1986), *rev'd on other grounds* 78 B.R. 155 (E.D.Tenn. 1987).

■ This brings the court to § 9–318(1)(b). Priority under § 9–318(1)(b) depends on (1) when USBI's overpayment claim against Jean & Associates accrued, and (2) when USBI received notification of the banks' security interest. TENN.CODE ANN. § 47–9–318(1)(b) (1992).

The banks perfected their security interest by filing a financing statement. However, the filing of the financing statement was not notification to USBI of the security interest. *Chase Manhattan Bank v. State,* 40 N.Y.2d 590, 388 N.Y.S.2d 896, 357 N.E.2d 366 (N.Y.1976).

■ The court cannot grant summary judgment to either side under § 9–318. The undisputed facts do not show when USBI was notified of the banks' security interest. The parties also have not argued the question of when USBI's overpayment claim accrued. With respect to § 9–318, there are genuine issues of material fact. Fed.R.Bankr.Proc. 7056 (West 1984).

USBI has raised the point that Alabama law may control. The court has examined the Alabama statutes and cases; they lead to the same result. Ala.Code Ann. §§ 7–1–201(37), 7–9–102, 7–9–104 & 7–9–105 (1992); *Lawson State Community College v.*

*First Continental Leasing Corp.*, 529 So.2d 926 (Ala.1988), *overruled on other grounds, Berner v. Caldwell*, 543 So.2d 686 (Ala.1989).

The court reserves ruling on other arguments raised in the summary judgment motions. The court will enter an order denying summary judgment.

This memorandum is the court's findings of fact and conclusions of law. Fed. R.Bankr.Proc. 7052 (West 1984).