## In re ATLANTIC COMPUTER SYSTEMS, Debtors.

## SETA CORPORATION OF BOCA, INC., Appellant,

### v.

## ATLANTIC COMPUTER SYSTEMS, Appellees.

### No. 93 Civ. 5238 (CSH).

United States District Court, S.D. New York.

Sept. 21, 1994.

Charles M. Forman, Newark, NJ, for Seta Corp. of Boca, Inc.

Maryellen Elizabeth Abely, Davis, Polk & Wardwell, New York City, for Atlantic Computer Systems.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Seta Corporation of Boca ("Seta") appeals from a decision of the Bankruptcy Court of the Southern District of New York, (Lifland, C.J.) (1) authorizing the debtor Atlantic Computer Systems ("Atlantic") to assume certain computer equipment leases and reject certain contracts known as "flexleases", and (2) disallowing certain claims filed by Seta. For the reasons set forth below, the order of the Bankruptcy Court is affirmed in part and reversed in part.

## BACKGROUND

Prior to 1990, Atlantic was a computer leasing company engaged in the buying and selling of computer equipment and the leasing of computer equipment to end users. In 1988, Seta and Atlantic entered into four leases of computer equipment and four agreements known as flexleases. The lease agreement with Seta was apparently in the form of a "master lease" and four separate "equipment schedules." The equipment schedules incorporate the terms of the master lease by reference, identify the equipment to be leased, and set forth the monthly rent, the commencement date and the initial term for that schedule.

Paragraph 15.2 of the master lease between Atlantic and Seta contained what is known in the industry as a "hell or high water clause", which includes an express waiver of the right to recoupment.[1] The

---

1. The "hell or high water" clause provides in full:

LESSEE'S OBLIGATION TO PAY LESSOR AND ASSIGNS ALL AMOUNTS DUE HEREUNDER IS ABSOLUTELY UNCONDITIONAL AND THIS LEASE SHALL NOT TERMINATE BY OPERATION OF LAW OR OTHERWISE, NOR SHALL LESSEE BE ENTITLED TO ANY ABATEMENT, REDUCTION, SET–OFF, COUNTERCLAIM, DEFENSE, INTERRUPTION, DEFERMENT, RECOUPMENT OR DEDUCTION WITH RESPECT TO ANY MONTHLY RENT OR ANY OTHER SUM PAYABLE HEREUNDER, NOR SHALL ANY OBLIGATIONS OF LESSEE HEREUNDER BE AFFECTED FOR ANY REASON WHATSOEVER,

master lease also includes an addendum which provides that "LESSEE shall have the right to assert any and all affirmative defenses and counterclaims it may have against the LESSOR as an offset to its obligations under Master Lease Agreements No. 0092."

The flexlease agreements entered into by the parties gave Seta the option, under certain conditions, to either lease certain replacement equipment (the "Flex Option") or to terminate the equipment schedule prior to its scheduled end (the "Walk Option"). Each flexlease expressly states that it "shall constitute a separate agreement between the parties and not an amendment to the Equipment Schedule."

On July 5, 1990, Atlantic filed a petition for reorganization under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Seta has not made any of the rental payments purportedly due on the equipment schedules since January 1, 1991. According to Atlantic, the total amount due from Seta now exceeds $330,000.

On February 27, 1991, Atlantic sent a Bankruptcy Court-approved notice to all flexleaseholders, including Seta, stating that (1) Atlantic intended to assume the equipment schedules; (2) Atlantic intended to reject the flexleases; (3) a flexleaseholder could object to assumption of the equipment schedules and rejection of the flexleases by filing a written objection; and (4) if a flexleaseholder did not object, then it would be deemed to have consented to and be bound by an order of the Bankruptcy Court authorizing Atlantic to assume the equipment schedules and reject the flexleases. Seta filed an objection to Atlantic's notice, and also filed a proof of claim for damages arising from the rejection of its flexleases.

Following a hearing on July 2, 1991, the Bankruptcy Court approved Atlantic's assumption of the equipment schedules and rejection of the flexleases. The Bankruptcy Court subsequently entered an order holding that the terms of each lease and flex lease

"are clear and unambiguous as to each constituting an entire agreement separate and distinct from the other agreement." Order of July 31, 1991.

On February 26, 1993, Atlantic moved to disallow the claims filed by Seta pursuant to § 502(d) of the Bankruptcy Code which directs that a claim be disallowed where the claimant is withholding property of the estate that may be recovered under § 542. That motion was consolidated with Seta's motion objecting to the rejection of the flexleases. Following a hearing on June 14, 1993, the Bankruptcy Court denied Seta's motion objecting to the rejection of the flexleases, and granted Atlantic's motion disallowing Seta's claim. On July 2, 1993, Seta moved for reargument, claiming that it could recover the damages suffered from the rejection of the flexleases by "recouping" from the rents owned Atlantic under the equipment schedules. The court denied Seta's motion following oral argument on October 14, 1993. Seta now appeals to this Court.

Seta argues that it may "recoup" its damages under the flexlease by withholding monies due Atlantic under the equipment leases.[2] Seta also argues that there is a legitimate dispute as to Seta's obligation to make the rent payments, and it has been unfairly penalized for raising the issue by having its claims disallowed under § 502(d). Atlantic asks that the judgment of the Bankruptcy Court be affirmed in all respects.

### DISCUSSION

#### I. *Recoupment Claim*

■ Atlantic maintains that Seta's recoupment claim was properly rejected because Seta expressly waived the right to recoupment under the contract, and because recoupment is not available given the nature of Seta's claim.

Seta vigorously disputes Atlantic's contention that the "hell or high water" clause in the master lease constitutes an express waiv-

---

NO MATTER HOW, WHEN, OR AGAINST WHOM ASSERTED, ARISING OR CLAIMED.

**2.** Seta objects to the characterization that it has withheld rent payments; Seta maintains that

Seta has never owed any rent payments because its counterclaims equal or exceed the rent obligations due under the lease. *See* Seta's Memo. of Law, at 1.

er of the right to recoupment. Seta argues that the right to recoupment is specifically preserved in the addendum to the master lease,[3] which accords the Seta "the right to assert any and all affirmative defenses it may have against [Atlantic] as an *offset* to its obligations under [the master lease]" (emphasis added).

Seta's argument confuses the right to offset with the right of recoupment. The "hell or high water" agreement waives both the right to offset and the right to recoupment; the addendum revives only the right to offset. Nowhere does it preserve Seta's right of recoupment.[4]

 Additionally, Seta fails to show entitlement to recoupment. As a general rule, recoupment is allowed only where the claims of the debtor and creditor arise from the same transaction. *See In re Davidovich,* 901 F.2d at 1537 (recoupment permits a creditor to offset a claim that arises from the same transaction as the debtor's claim); *In re Denby Stores,* 86 B.R. 768, 781–82 (Bankr. S.D.N.Y.1988) and cases cited therein. *See also In re Buckley & Assoc. Insurance,* 67 B.R. 331, 334 (Bankr.E.D.Tenn.1986) and cases cited therein. Seta's claim against Atlantic arises out of the flexleases, which are separate contracts from the equipment leases that out of which Atlantic's claims against Seta arise.

Seta argues that the flexleases and the equipment schedules (subject to the master lease) are a single contract. The Bankruptcy Court, however, found that the flexleases and the equipment schedules were separate and distinct· contracts, *see* order dated July 31, 1991, and given the flexleases' express language to that effect, I will not disturb that ruling.

Accordingly, Seta fails to show that even if it had preserved the right to recoupment, it would be entitled to the remedy it seeks.

3. The addendum specifically provides that in the event there is a conflict with the master lease, the addendum controls.

4. The substantive differences between set-off and recoupment are explained by the 10th Circuit in

## II. *Disallowance of Seta's Claim*

Seta also appeals the Bankruptcy Judge's decision disallowing Seta's claims against the debtor pursuant to § 502(d). Section 502(d) directs the court to disallow the claim of any claimant who is withholding property of the estate which may be recovered under § 542(b) of the Code. Atlantic argued, and the Bankruptcy Court ruled, that Seta's failure to pay the rent due on the equipment schedules requires disallowance of Seta's claim on the flexleases.

The property Seta is accused of not turning over to the estate is the property Seta claimed it was entitled to under the principles of recoupment or set-off. Seta argues that disallowance of its claims prior to a determination that it had no right to set-off or recoupment unfairly penalizes it for raising a legitimate and colorable claim.

Atlantic argues that a claimant is required to turn over the property even where no judgment has been entered on the debtor's claim, and even where the debtor brings no action to recover the property. Thus, its position appears to be that Seta had an obligation to turn over the property prior to any resolution of its recoupment/set-off argument; Seta's failure to do so precludes it from asserting any claims.

 I disagree. "Section 502(d) is designed to assure an equality of distribution of the assets of the bankruptcy estate[,] not create penalties for asserting a setoff right." *Matter of Davis,* 889 F.2d 658 (5th Cir.1989). That court held that a court may not order a turn over in one instant and in the same instant disallow a creditor's claim for failing to comply with that order. Instead, a court should afford a creditor a reasonable period of time to comply before dismissing claims.

The Fifth Circuit's interpretation of § 502(d) is supported by Collier on Bankruptcy. That treatise describes the operation of § 502(d) as follows:

*In re Davidovich,* 901 F.2d 1533, 1537 (10th Cir.1990). Seta acknowledges these differences, and concedes that any claim for set-off (which is preserved by the addendum) is barred by § 553 of the Code.

*Once the liability of the transferee has been determined,* the claim interposed by the transferee will be disallowed *unless* such transferee gives effect to the judgment flowing from the exercise of the avoiding powers described above. *3 Collier on Bankruptcy,* ¶ 502.04 (15th ed. 1993) (emphasis added).

That description clearly envisions some sort of determination of the claimant's liability before its claims are disallowed, and in the event of an adverse determination, the provision of some opportunity to turn over the property.

In the case at bar, the Bankruptcy Judge ruled on Seta's recoupment claim in the same order in which it dismissed Seta's other claims. From the record on appeal, it does not appear that Seta was ever accorded any opportunity to turn over the property, and thus comply with § 502(d).

Accordingly, I affirm the order of the Bankruptcy Court insofar as it rejects Seta's recoupment/set-off argument. However, I vacate the dismissal of Seta's other claims, and remand to the Bankruptcy Court to set an reasonable deadline for Seta to turnover the claimed rent, failing which its claims may be dismissed.

It is SO ORDERED.