United States Court of Appeals,

Eleventh Circuit.

No. 94-9025.

FIRST NATIONAL BANK OF BOSTON, successor-in-interest of Brown Transport Corp., Plaintiff-Appellee, Cross-Appellant,

v.

THOMSON CONSUMER ELECTRONICS, INC., Defendant-Appellant, Cross-Appellee.

May 31, 1996.

Appeals from the United States District Court for the Northern District of Georgia. (No. 1:92-cv-2739-FMH), Frank M. Hull, Judge.

Before TJOFLAT, Chief Judge, CARNES, Circuit Judge, and FAY, Senior Circuit Judge.

TJOFLAT, Chief Judge:

First National Bank of Boston, having acquired the accounts receivable of Brown Transportation Corp., a bankrupt motor carrier, brought this action against Thomson Consumer Electronics, Inc., to collect for transportation services that Brown had performed for Thomson. Thomson sought to avoid the entry of judgment by asserting several claims for recoupment, which, in total, exceeded the amount that it owed for Brown's services. The district court, to which this case was removed from state court,[1] allowed some, but not all, of Thomson's claims for recoupment, and gave the bank judgment for the difference. We conclude that the applicable state law required the court to honor all of Thomson's claims. We therefore vacate the court's judgment and remand the case for the entry of a judgment of no liability in favor of Thomson.

_____

[1]Diversity of citizenship existed between the parties; hence, the case was removable under 28 U.S.C. § 1441(a) (1994).

In March of 1988, Brown and Thomson entered into a one-year transportation contract, effective April 1, 1988, under which Brown would provide shipping services for Thomson; the contract was later extended for another year, effective April 1, 1989. On December 30, 1988, Brown and the Bank entered into a security agreement in which Brown granted to the Bank a security interest in all of its accounts receivable. The Bank perfected its security interest on January 3, 1989. On October 31, 1989, Brown filed a petition for relief under Chapter 11 of the Bankruptcy Code, *see* 11 U.S.C. §§ 301, 1101-1174 (1994); on January 8, 1990, the case was converted into a Chapter 7 liquidation and a trustee was appointed, *see* 11 U.S.C. §§ 701-766, 1112. On the Bank's application, the bankruptcy court lifted the automatic stay, *see* 11 U.S.C. § 362, thus allowing the Bank to collect Brown's accounts receivable. On September 3, 1992, the trustee and the Bank agreed to a settlement, according to which the Bank would withdraw all of its claims against the bankrupt's estate in return for, among other things, Brown's interest, if any, in its accounts receivable. The bankruptcy court approved the settlement agreement on January 28, 1993.

On October 19, 1992, before the settlement was approved, the Bank sued Thomson in Georgia state court to recover $205,595.82 in unpaid shipping invoices Brown had issued to Thomson for over one thousand shipments made between September 1, 1988, and December 12, 1989. In its answer to the Bank's complaint, Thomson sought recoupment under the transportation contract for shipments lost in

transit on November 19 and December 9, 1988, and on June 30, 1989. As noted, the case was subsequently removed to the district court.

On July 29, 1994, after a bench trial, the district court issued its final judgment. The court found that the Bank had proven that Thomson owed it $99,282.65 for unpaid shipping charges.[2] The court also found that Thomson had proven its claims for lost shipments in the amount of $394,692.44. However, applying North Carolina law,[3] see N.C.Gen.Stat. § 25-9-318(1), the court did not allow Thomson to recoup the value of shipments that were lost after January 3, 1989, the date the Bank perfected its security interest in Brown's accounts receivable.[4] The allowable claims, amounting to $62,242.44, reduced the amount that Thomson owed to the Bank to $37,040.21. The court also awarded $15,935.38 in

_____

[2]The district court reduced the Bank's $205,595.82 claim to take into account discounts that Brown had awarded Thomson and unpaid shipping invoices that were issued outside of the statute of limitations period. See O.C.G.A. § 46-9-5 (three-year limitation on actions for recovery of intrastate shipping charges).

[3]The district court did not determine whether Georgia or North Carolina law generally applies in this case. However, the Uniform Commercial Code, as adopted in both states, provides that in the case of intangible collateral, such as accounts receivable, "[t]he law (including the conflict of law rules) of the jurisdiction in which the debtor is located governs the perfection and the effect of perfection or nonperfection of the security interest," and that "[a] debtor shall be deemed located ... at his chief executive office if he has more than one place of business." O.C.G.A. § 11-9-103(3)(b), (d); N.C.Gen.Stat. § 25-9-103(3)(b), (d); see U.C.C. § 9-103(3)(b), (d). The debtor in this case (Brown) was located in North Carolina. The district court thus concluded that, by operation of the law of either state, North Carolina's law governs the Bank's right to collect the accounts receivable. The parties do not challenge this conclusion.

[4]Thomson had proven claims for $62,242.44 that accrued on December 9 and October 19, 1988, and claims for $332,450 that accrued on June 30, 1989.

pre-judgment interest, and therefore entered judgment for the Bank in the amount of $52,975.59.

Thomson appeals the denial of its claims for recoupment that accrued after January 3, 1989. The Bank cross-appeals, arguing that Thomson suffered no damage from the lost shipments and should not prevail on any of its claims for recoupment. We address both of these appeals in turn.

## II.

The Bank asserts that it has a perfected security interest in the subject accounts receivable that gives it priority over any subsequent recoupment claims of a third party by virtue of the general priority rules of Article 9 of the Uniform Commercial Code, as adopted in North Carolina. *See* N.C.Gen.Stat. § 25-9-201. Thomson, however, argues that the applicable rules are found in N.C.Gen.Stat. § 25-9-318(1), which deals specifically with the rights of an "assignee" against those of an "account debtor." Section 25-9-318(1) provides as follows:

> Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in [N.C.Gen.Stat. §] 25-9-206 the rights of an assignee are subject to
>
> (a) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and
>
> (b) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment.

N.C.Gen.Stat. § 25-9-318(1)(a)-(b). Thomson is clearly an "account debtor," which is defined as a "person who is obligated on an account." N.C.Gen.Stat. § 25-9-105(1)(a). The accounts in this case are the accounts receivable that were created by Thomson's

obligation to pay Brown for services Brown rendered as a motor carrier. *See* N.C.Gen.Stat. § 25-9-106. Provided that the Bank is an "assignee," the Bank's right to recover on the accounts receivable is subject to "all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom" and "any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment." N.C.Gen.Stat. § 25-9-318(1)(a)-(b).

The Bank argues that section 25-9-318 does not apply because it is not an assignee of Brown's accounts receivable, but rather a secured party with a perfected security interest therein. Thomson claims that the district court was correct in finding that section 25-9-318 applies, but that the district court erred in applying subsection (1)(b) rather than subsection (1)(a).

### A.

We take the Bank's argument first. It is not clear to us that the Bank remains a secured party, since, with the approval of the settlement agreement, the underlying debt has been extinguished and the collateral—the accounts receivable—is no longer owned by the debtor. *See, e.g., In re Advanced Aviation, Inc.,* 101 B.R. 310, 313 (Bankr.M.D.Fla.1989). But we need not decide whether the Bank does or does not remain a secured party, since section 25-9-318 applies in either case.

The instrument that gave the Bank its security interest in the accounts receivable also, by its very terms, assigned the accounts receivable to the Bank. The security agreement read, in part, as

follows:

> § 1. GRANT OF SECURITY INTERESTS, ETC. [Brown] hereby ... pledge[s] and assign[s] to the [Bank] ... and grant[s] to the [Bank] ... a continuing security interest in and lien on all of the accounts of [Brown], and all the proceeds and products thereof....

Brown clearly assigned to the Bank all of its accounts, including its accounts receivable, making the Bank an "assignee" within the meaning of section 25-9-318. Had the security agreement not provided for an assignment, however, the Bank surely became the assignee of the accounts receivable by virtue of its settlement with the trustee of the bankruptcy estate, when all of the accounts of the bankrupt and the proceeds thereof were turned over to the Bank.

If, as the Bank claims, it has only a perfected security interest in the accounts receivable, it is nevertheless still an "assignee" within the meaning of section 25-9-318. "For purposes of [U.C.C. § 9-318], the courts and the UCC have made no distinction between a party with a security interest in a debtor's accounts receivable and a party who is an assignee of a debtor's accounts receivable." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1190 (7th Cir.1990) (applying Wisconsin's identical version of U.C.C. § 9-318). It seems clear that "a secured party with a security interest in accounts or general intangibles is the assignee under [U.C.C.] § 9-318." *In re Otha C. Jean & Assocs., Inc.,* 152 B.R. 219, 222-23 (Bankr.E.D.Tenn.1993) (applying Tennessee's identical version of U.C.C. § 9-318). This interpretation is in accord with the purpose of section 25-9-318, which is to govern the third-party rights that arise when contract

rights are assigned as part of a secured transaction.  The district court was thus correct in applying the rules of section 25-9-318 to determine the Bank's rights as an assignee of the accounts receivable.

B.

The district court was not correct, however, when it applied subsection (1)(b) of section 25-9-318 rather than subsection (1)(a).  Subsection (1)(a) makes the assignee of a contract right subject to "all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom."  Subsection (1)(b) makes an assignee subject as well to "any other defense or claim," but only if those defenses or claims accrue "before the account debtor receives notification of the assignment."  The district court found that Thomson's recoupment claims arose out of the transportation contract between Thomson (the account debtor) and Brown (the assignor).[5]  Nonetheless, the court allowed Thomson to assert only those recoupment claims that accrued before the perfection of the Bank's security interest, that is, before Thomson supposedly received notification of the

_____

[5]The Bank continues to argue on appeal that the only contracts between Brown and Thomson were the individual freight bills for each of the more than one thousand shipments involved in this case.  According to the Bank, none of these so-called contracts provides a basis for a recoupment claim.  The district court, however, found that "while the shipments are evidenced by the freight bills, the shipments were made pursuant to the terms of the overall [Brown-Thomson] contract" and that Thomson's recoupment claims for the lost shipments "relate equally to and arise equally from the same contract between [Thomson] and Brown and not separate, unrelated contracts."  Nothing in the evidence or in the Bank's argument on appeal persuades us to disturb this finding.

assignment.[6]  This would have been an appropriate holding if the claims were "any other" claims within the meaning of subsection 1(b).  But Thomson's claims arose out of the terms of the transportation contract within the meaning of subsection 1(a), and thus all of them should have been allowed.  *Cf. Equitable Factors Co. v. Chapman-Harkey Co.,* 43 N.C.App. 189, 258 S.E.2d 376, 378-79 (1979) (applying N.C.Gen.Stat. § 25-9-318(1)(a)), *cert. denied,* 298 N.C. 805, 262 S.E.2d 1 (1979).

The district court explained that its decision to disallow Thomson's post-perfection recoupment claims was necessary in order to take into account the Bank's "dual role as a perfected security holder."  We find no principled reason not to follow the explicit language of section 25-9-318 when that section is squarely applicable.  As the official comment to section 25-9-318 makes clear, "[w]hen the account debtor's defenses on an assigned claim arise from the contract between him and the assignor, it makes no difference whether the breach giving rise to the defense occurs before or after the account debtor is notified of the assignment."  N.C.Gen.Stat. § 25-9-318 comment 1.  We therefore reverse the decision of the district court and hold that the Bank's right to recover on the accounts receivable is subject to all of Thomson's claims for recoupment that arise out of the transportation contract.[7]

---

[6]Because we hold that § 25-9-318(1)(b) does not apply to the claims involved in this case, we need not address the question of whether the perfection of a security interest is sufficient "notification" within the meaning of subsection (1)(b).

[7]The claims for recoupment are not claims for affirmative relief.  Rather, Thomson merely seeks to set off against the

III.

In its cross-appeal, the Bank argues that Thomson cannot make claims for recoupment because the General Electric Company (and not Thomson) was the party damaged by the lost shipments.[8]  This is a question of fact.  The district court found that Thomson was a party to the transportation contract with Brown and that Thomson was both the party liable on the contract for the shipping charges and the party entitled to assert claims under the contract for the lost shipments.  We have reviewed the evidence relied on by the court and have considered the Bank's arguments on this issue;  we hold that the district court's finding is not "clearly erroneous." *See* Fed.R.Civ.P. 52(a).  We therefore affirm the court's decision that Thomson was the injured party and could validly make claims for recoupment under the transportation contract.

IV.

The district court found that Thomson's claims for recoupment, which we now allow in full, amount to $394,692.44.  The Bank's total claim against Thomson for the unpaid shipping charges, which is undisturbed by this appeal, is $99,282.65.  Because the amount of Thomson's recoupment claims exceeds the amount of the Bank's claim, we VACATE the district court's judgment and REMAND the case for the entry of judgment in favor of Thomson on the Bank's claim.

SO ORDERED.

---

Bank's claim an amount equal to that claim.

[8]Thomson acquired the consumer electronics business of General Electric on January 1, 1988.